No. 20-1692

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

KYLIE DIDONATO,

Plaintiff-Appellant,

v.

TIM PANATERA and CITY OF CHICAGO,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
No. 19 C 2737
The Honorable Virginia M. Kendall, Presiding

————

## BRIEF OF DEFENDANT-APPELLEE CITY OF CHICAGO

————

CELIA MEZA
Acting Corporation Counsel
  of the City of Chicago
2 N. LaSalle Street, Suite 580
Chicago, Illinois 60602
(312) 742-0115

BENNA RUTH SOLOMON
  Deputy Corporation Counsel
MYRIAM ZRECZNY KASPER
  Chief Assistant Corporation Counsel
STEPHEN G. COLLINS
  Assistant Corporation Counsel
        Of Counsel

# TABLE OF CONTENTS

———

**Page**

TABLE OF AUTHORITIES ...................................................................................ii

JURISDICTIONAL STATEMENT .......................................................... 1

ISSUES PRESENTED ............................................................................... 2

STATEMENT OF THE CASE................................................................... 2

SUMMARY OF ARGUMENT................................................................... 5

ARGUMENT ............................................................................................... 5

I.    PANATERA DID NOT ACT UNDER COLOR OF STATE LAW.............. 7

II.   DIDONATO WAS NOT DEPRIVED OF A FEDERALLY GUARANTEED
      RIGHT. ...................................................................................... 13

    A.    DiDonato Was Not In State Custody.............................................. 14

    B.    DiDonato Did Not Encounter A State-Created Danger............. 16

CONCLUSION ........................................................................................... 19

# TABLE OF AUTHORITIES

———

**CASES**                                                                            **Page(s)**

American Manufacturers Mutual Insurance Co. v. Sullivan,
526 U.S. 40 (1999) .................................................................... 15

Barnes v. City of Centralia,
943 F.3d 826 (7th Cir. 2019) ................................................. 7, 10

Boucher v. Financial Systems of Green Bay, Inc.,
880 F.3d 362 (7th Cir. 2018) ..................................................... 6

Buchanan-Moore v. County of Milwaukee,
570 F.3d 824 (7th Cir. 2009) ..................................................... 6

Byrne v. Kysar,
347 F.2d 734 (7th Cir. 1965) .................................................... 12

Carlos v. Santos,
123 F.3d 61 (2d Cir. 1997) ......................................................... 7

Defender Security Co. v. First Mercury Insurance Co.,
803 F.3d 327 (7th Cir. 2015) .................................................... 17

DeShaney v. Winnebago County Department of Social Services,
489 U.S. 189 (1989) .......................................................... 13, 14, 15

Estate of Sims v. County of Bureau,
506 F.3d 509 (7th Cir. 2007) .................................................... 11

First Midwest Bank v. City of Chicago,
988 F.3d 978 (7th Cir. 2021) ................................................... 6, 14

Greco v. Guss,
775 F.2d 161 (7th Cir. 1985) ...................................................... 8

G & S Holdings LLC v. Continental Casualty Co.,
697 F.3d 534 (7th Cir. 2012) .................................................... 17

Hall v. Flannery,
840 F.3d 922 (7th Cir. 2016) ...................................................... 9

Honaker v. Smith,
    256 F.3d 477 (7th Cir. 2001).................................................................... 7, 10

Hughes v. Meyer,
    880 F.2d 967 (7th Cir. 1989)................................................................... 7, 11

Latuszkin v. City of Chicago,
    250 F.3d 502 (7th Cir. 2001)................................................................... 9, 11

Lugar v. Edmondson Oil Co.,
    457 U.S. 922 (1982)................................................................................... 15

Monfils v. Taylor,
    165 F.3d 511 (7th Cir. 1998)................................................................. 14, 17

145 Fisk, LLC v. Nicklas,
    986 F.3d 759 (7th Cir. 2021)......................................................................... 6

Paine v. Cason,
    678 F.3d 500 (7th Cir. 2012)................................................................. 13, 14

Perkins v. Lawson,
    312 F.3d 872 (7th Cir. 2002)....................................................................... 17

Reed v. Gardner,
    986 F.2d 1122 (7th Cir. 1993)..................................................................... 14

Salazar v. City of Chicago,
    No. 84 C 10156, 1985 WL 2482 (N.D. Ill. Sept. 9, 1985) ........................... 12

Salazar v. City of Chicago,
    940 F.2d 233 (7th Cir. 1991)....................................................................... 15

Sandage v. Board of Commissioners,
    548 F.3d 595 (7th Cir. 2008)....................................................................... 14

Screws v. United States,
    325 U.S. 91 (1945)......................................................................................... 7

Wilson v. Price,
    624 F.3d 389 (7th Cir. 2010)....................................................................... 12

Wilson v. Warren County,
    830 F.3d 464 (7th Cir. 2016)....................................................................... 18

<u>Wudtke v. Davel,</u>
  128 F.3d 1057 (7th Cir. 1997)........................................................................ 8, 13

<u>Wyatt v. Cole,</u>
  504 U.S. 158 (1992)................................................................................. 7

**OTHER AUTHORITIES**

28 U.S.C. § 1291............................................................................................ 2

28 U.S.C. § 1331............................................................................................ 1

28 U.S.C. § 1367(a) ....................................................................................... 1

28 U.S.C. § 1441(a) ....................................................................................... 1

28 U.S.C. § 1446(a) ....................................................................................... 1

42 U.S.C. § 1983............................................................................................ 6

# JURISDICTIONAL STATEMENT

The jurisdictional statement of plaintiff-appellant Kylie DiDonato is not complete and correct.

DiDonato filed an amended complaint in the Circuit Court of Cook County that asserted a claim against Tim Panatera and the City of Chicago pursuant to 42 U.S.C. § 1983.  R. 1-1 at 12-13.  She also asserted various state-law claims.  R. 1-1 at 7-12, 13-14.  The City removed the action to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §§ 1441(a) and 1446(a).  R. 1. The district court had jurisdiction over the section 1983 claim pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(a).

DiDonato later filed a second amended complaint.  R. 37; App. 14-25.  She asserted a claim for denial of proper medical care in violation of 42 U.S.C. § 1983, as well as claims under state law for negligence, assault, battery, and willful and wanton misconduct.  R. 37 at 6-12; App. 19-25.[1]  The district court had jurisdiction over the federal claim pursuant to 28 U.S.C. § 1331, and it had supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(a).

The district court dismissed the section 1983 claim with prejudice.  R. 57 at 12; App. 13.  The court declined to exercise supplemental jurisdiction over the state-law claims and dismissed them without prejudice.  R. 57 at 12; App. 13.  The court entered judgment in favor of Panatera and the City on February 28, 2020.  R. 58;

---

[1]  We cite DiDonato's short appendix as "App. __."

App. 1.

On March 18, 2020, Panatera filed a motion to extend the time to file a notice of appeal to April 28, 2020, R. 59, which the district court granted, R. 60. DiDonato filed a notice of appeal on April 24, 2020. R. 61. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED

———

1. Whether DiDonato plausibly alleged that Panatera acted under color of state law, where he did not exercise his authority as a City paramedic.

2. Whether DiDonato plausibly alleged that she experienced a deprivation of a federally guaranteed right, where DiDonato was not in state custody or injured by a state-created danger.

## STATEMENT OF THE CASE

———

DiDonato's amended complaint alleged that she fell and injured her head while visiting the home of Panatera, a City paramedic. R. 1-1 ¶¶ 8, 10, 15. According to DiDonato, Panatera failed to provide adequate medical care. R. 1-1 ¶ 47. She further alleged that Panatera sexually assaulted her. R. 1-1 ¶¶ 28, 29. After removal, R. 1, the City and Panatera separately moved to dismiss the section 1983 claim pursuant to Rule 12(b)(6), R. 17, 19. The City argued that DiDonato did not have a constitutional right to receive medical care, and that the City could not be liable absent a <u>Monell</u> claim, which DiDonato did not allege. R. 17 at 3-5. Panatera further argued that his alleged actions were not under color of state law. R. 20 at 3-4.

The district court dismissed the section 1983 claim without prejudice. R. 34 at 10. The court determined that DiDonato failed to allege facts establishing that Panatera or the City had a duty to provide her with medical care. R. 34 at 4-6. The court also explained that DiDonato failed to develop any argument that defendants were liable on the basis that she was injured as the result of a state-created danger. R. 34 at 6. Nor did DiDonato sufficiently allege that Panatera acted under color of state law. R. 34 at 6-9. Moreover, the City could not be vicariously liable for Panatera's actions pursuant to section 1983. R. 34 at 9.

DiDonato then filed a second amended complaint, in which she alleged the following facts. On March 18, 2018, she visited Panatera's home, and the two spent some time in Panatera's hot tub late that evening. R. 37 ¶¶ 9, 10; App. 15. She got out to use the bathroom, where she fell and severely injured her head. R. 37 ¶ 10; App. 15. The fall rendered her "immobile" and "[s]he could not move herself." R. 37 ¶ 12; App. 15. Panatera found her in the bathroom and stated, "Holy shit, that's bad." R. 37 ¶ 11; App. 15. He picked her up and placed her in the bathtub, where he rinsed blood off her body. R. 37 ¶ 14; App. 16. He then laid her on the bathroom floor and wrapped her head in a towel. R. 37 ¶¶ 16, 18; App. 16. DiDonato tried to crawl out of the bathroom before Panatera picked her up and carried her to his bed. R. 37 ¶¶ 20, 21; App. 16. DiDonato was "disoriented and near unconsciousness" and "did not have the liberty to get out of Panatera's bed." R. 37 ¶ 24; App. 16. Panatera got on top of DiDonato and tried "to have non-consensual sexual intercourse with her." R. 37 ¶ 25; App. 17.

DiDonato lost consciousness, R. 37 ¶ 25; App. 17, until the following morning,

when Panatera "ha[d] non-consensual sexual intercourse with her," R. 37 ¶ 26; App. 17. She then lost consciousness again, until late that afternoon, when she heard Panatera take "a phone call from his work partner during which they purportedly engaged in a work-related conversation." R. 37 ¶ 28; App. 17. Panatera told DiDonato "that he had to work and that she had to leave," R. 37 ¶ 30; App. 17, and drove her home, R. 37 ¶ 33; App. 18.

The second amended complaint asserted a claim under section 1983 that DiDonato called "Deliberate Indifference (Denial of Proper Medical Care)." R. 37 at 9; App. 22. It named only Panatera as a defendant on that claim, R. 37 at 9; App. 22, but alluded to "Defendants' unconstitutional conduct" and "be[ing] harmed by Defendants," R. 37 ¶¶ 63, 64; App. 23. The claim further included a prayer for relief "against the Defendants, TIM PANATERA [sic]" for damages. R. 37 at 11; App. 24.

The City and Panatera separately moved to dismiss the section 1983 claim in the second amended complaint. R. 40, 43. They reiterated their arguments that DiDonato did not have a constitutional right to medical care and that Panatera was not acting under color of state law. R. 40 at 3-5; R. 43 at 4-5. DiDonato responded that she did have a right to medical care because she was in Panatera's custody. R. 51 at 2-3; R. 52 at 2. She further argued that Panatera acted under color of state law because he took a work call during her visit, R. 51 at 3, and performed his official duties as a paramedic "by stating 'Holy shit, that is bad,'" by rinsing blood off her body, R. 52 at 3, and "by wrapping her head in a towel," R. 51 at 3-4.

The district court dismissed the section 1983 claim with prejudice. R. 57 at 12; App. 13. The court determined that DiDonato did not have a right to medical

4

care because she was not in state custody.  R. 57 at 9; App. 10.  Additionally, she "d[id] not plead any facts" supporting liability on the theory that she was injured as the result of a state-created danger.  R. 57 at 6; App. 7.  The court also concluded that Panatera was not acting under color of state law because "actions unrelated to a state actor's official duties are not taken under color of law."  R. 57 at 11; App. 12.  Upon dismissing the section 1983 claim, the court declined to exercise supplemental jurisdiction over the state-law claims and dismissed them without prejudice.  R. 57 at 12; App. 13.  DiDonato appeals.  R. 61.

## SUMMARY OF ARGUMENT

─────

The district court correctly dismissed DiDonato's claim under section 1983. To prevail on that claim, DiDonato must establish that Panatera acted under color of state law.  But she cannot make that showing because she alleges facts establishing that Panatera acted entirely as a private citizen.  Nor did DiDonato plausibly allege that she was in state custody or that she met a state-created danger.  The district court's judgment should therefore be affirmed.

## ARGUMENT

─────

DiDonato has failed to state a claim under section 1983.  She styles that claim as "Deliberate Indifference (Denial of Proper Medical Care)."  R. 37 at 9; App. 22.  DiDonato alleges that she suffered "injuries [that] mandated medical treatment" while she was at Panatera's home, R. 37 ¶ 62; App. 23, and that he "deliberately and intentionally failed to provide [her] with necessary medical attention," R. 37 ¶ 61; App. 23.  DiDonato thus premises her section 1983 claim on

the theory that Panatera's actions violated a federal right to adequate medical care.

DiDonato cannot prevail on that theory. Section 1983 provides, in pertinent part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. 1983. The statute thus "provides a federal remedy against state actors who deprive others of rights secured by the federal Constitution and laws." First Midwest Bank v. City of Chicago, 988 F.3d 978, 982 (7th Cir. 2021). "To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law." Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009).

DiDonato's section 1983 claim fails both requirements. In Part I, we explain that Panatera's actions were not under color of state law. And in Part II, we explain that DiDonato did not experience a deprivation of her federally guaranteed rights. This court reviews de novo a dismissal for failure to state a claim, 145 Fisk, LLC v. Nicklas, 986 F.3d 759, 765 (7th Cir. 2021), and determines whether the complaint "allege[s] enough facts to state a claim to relief that is plausible on its face," Boucher v. Financial Systems of Green Bay, Inc., 880 F.3d 362, 365-66 (7th Cir. 2018) (internal quotation marks omitted). Under these standards, the district court's judgment should be affirmed.

6

**I. PANATERA DID NOT ACT UNDER COLOR OF STATE LAW.**

To begin, Panatera's actions were not under color of state law. Although he held a job as a City paramedic at the time, "[n]ot every action by a state official or employee is to be deemed as occurring 'under color' of state law." Hughes v. Meyer, 880 F.2d 967, 971 (7th Cir. 1989). Rather, "[a]ction is taken under color of state law when it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Honaker v. Smith, 256 F.3d 477, 484 (7th Cir. 2001) (internal quotation marks omitted). This requirement reflects section 1983's purpose "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." Wyatt v. Cole, 504 U.S. 158, 161 (1992).

Panatera did not act under color of state law because he did not exercise – let alone misuse – his authority as a City paramedic. Rather, he acted entirely as a private individual. "[A]cts of officers in the ambit of their personal pursuits are plainly excluded" from actions under color of state law. Screws v. United States, 325 U.S. 91, 111 (1945). And along similar lines, "[s]ection 1983 does not cover disputes between private citizens, even if one happens to be an officer." Barnes v. City of Centralia, 943 F.3d 826, 831 (7th Cir. 2019) (internal quotation marks omitted). As the Second Circuit has observed, where "[a]ny citizen may perform" the acts in question, they are not the kind of action that is possible only by virtue of a person's public employment. Carlos v. Santos, 123 F.3d 61, 65 (2d Cir. 1997).

Here, Panatera's alleged actions comprised entirely private behavior in which any person could have engaged. When DiDonato fell and injured herself at

Panatera's home, he allegedly provided ineffectual treatment of her wounds by wrapping a towel around her head. R. 37 ¶¶ 61, 62; App. 23. That conduct did not involve a misuse of power that Panatera possessed by virtue of his job as a paramedic. Panatera is not even alleged to have invoked his status as a City paramedic. Rather, the alleged conduct describes what any person might have done for a guest who injured herself while visiting his house. Indeed, anyone could have provided the basic care Panatera allegedly provided without the authority that comes with being a City paramedic.

Nor did Panatera's alleged sexual assaults arise from a misuse of his authority as a paramedic, either. This court has observed that when a state official commits an assault "under circumstances where the assaulter is enabled to take his actions because of his governmental position," the official acts under color of state law. Wudtke v. Davel, 128 F.3d 1057, 1063-64 (7th Cir. 1997). In Wudtke, the plaintiff was a teacher who alleged that a school superintendent used his position of authority to coerce her into having nonconsensual sex with him. Id. at 1059. DiDonato, however, alleges no facts whatsoever suggesting that Panatera's position as a paramedic enabled him to assault her.

Moreover, DiDonato alleges that she was at Panatera's home until he told her "that he had to work and that she had to leave." R. 37 ¶ 30; App. 17. In other words, Panatera was off-duty at the time. And while "being off-duty does not preclude [a government employee] from acting under color of state law," Greco v. Guss, 775 F.2d 161, 168 (7th Cir. 1985), the fact that Panatera was not working further supports the conclusion that he acted in his private capacity. He was not

8

responding to a 911 call, wearing his uniform, using his paramedic's equipment, or otherwise deploying any indicia of a City paramedic's authority.

DiDonato nevertheless insists that Panatera did act under color of state law that evening. Brief of Plaintiff-Appellant ("DiDonato Br.") 12-14. But the section of her brief devoted to that issue merely recites the allegations from her complaint, without making any argument why Panatera's alleged actions demonstrate that he acted under color of state law. Id. Elsewhere, DiDonato asserts that Panatera acted under color of state law because he was "on call," and exercised his "official duties" by wrapping her head in a towel and saying her injury looked "bad." Id. at 22. But "perfunctory and undeveloped arguments are forfeited on appeal." Hall v. Flannery, 840 F.3d 922, 927 (7th Cir. 2016) (internal quotation marks omitted). DiDonato's cursory treatment of this issue has forfeited any argument that Panatera acted under color of state law, which defeats her section 1983 claim.

But even setting forfeiture aside, DiDonato did not plausibly allege that Panatera acted under color of state law. To begin, it does not matter that Panatera was allegedly "on call." "The important consideration . . . in determining whether an officer is acting under color of state law is the nature of the specific acts performed." Latuszkin v. City of Chicago, 250 F.3d 502, 505-06 (7th Cir. 2001). Assuming Panatera was on call, that would mean only that he was subject to being called into duty while he was with DiDonato and not working. His supposed on-call status says nothing about whether his actions amounted to an exercise of his authority as a paramedic while he was off-duty and at his home with DiDonato.

Nor can DiDonato obtain reversal by pointing to her allegations that

9

Panatera said her injury was "bad" and then wrapped her head in a towel. Panatera's rudimentary assessment of DiDonato's wounds and his wrapping her head in a towel was not action he took pursuant to his official duties. As we have explained, any private person – paramedic or not – could have done what Panatera allegedly did here.[2]

To the extent Panatera's alleged acts could vaguely be described as assessment and treatment of injuries, which are among a paramedic's responsibilities, that still is not enough to make Panatera's conduct under color of state law. When a public official does not invoke the authority he has by virtue of his state employment, he does not act under color of state law, even if his actions approximate the kinds of tasks he performs for his job. For example, in Barnes v. City of Centralia, Barnes was arrested after she posted statements on Facebook that a police officer believed threatened him and his family. 943 F.3d 826, 830 (7th Cir. 2019). The officer reported the posts to a sergeant but did not participate in Barnes' arrest. Id. at 829. Although a police officer's investigative responsibilities include communicating with fellow officers about potential crimes, this court held that the officer did not act under color of state law. Id. at 832. His conduct did not "involve any exercise of state authority," such as arresting the person who made the threats, so he was acting purely as a private person. Id. at 831.

---

[2] In Honaker, this court explained that action under color of state law involves a misuse of power that comes with state employment, and then added, "[a]s a result, acts by a state officer are not made under color of state law unless they are related in some way to the performance of the duties of the state office." 256 F.3d at 485. Here, Panatera did not invoke his authority as a City paramedic, and thus his acts did not relate to his official duties.

Likewise, in <u>Estate of Sims v. County of Bureau</u>, an on-duty sheriff who visited the home of a journalist who "was investigating [the sheriff's] campaign misconduct" did not act under color of state law when he made the visit. 506 F.3d 509, 516 (7th Cir. 2007). The sheriff did not gain access to the journalist's home through his position as the sheriff, and this court rejected the plaintiff's argument that "his actions were part of an official investigation." <u>Id.</u> Rather, the conduct consisted of "private actions of a person who happened to be a county officer." <u>Id.</u> So even though the sheriff's actions roughly resembled the kind of investigatory conduct a law enforcement officer engages in, his conduct was private and not under color of state law.

Other cases similarly show that absent an exercise of state authority, a government employee's acts are not under color of state law. In <u>Hughes</u>, a game warden reported possible criminal activity to police officers. 880 F.2d at 969. Although the warden was himself "a law enforcement officer," <u>id.</u> at 972, he did not act under color of state law. The warden's official authority did "not extend to the general enforcement of state law," and his status as a public "official did not clothe him with greater authority to make statements to the police . . . than any other citizen would possess." <u>Id.</u> Likewise, in <u>Latuszkin</u>, a police officer did not act under color of state law when he drove his personal vehicle while he was drunk. 250 F.3d at 506. There were no allegations that the officer "engaged in police activity, that he displayed any police power, or that he possessed any indicia of his office." <u>Id.</u> His behavior was thus "entirely private." <u>Id.</u>

The same principle holds for public employees who have jobs outside of law

11

enforcement. An alderman who attempted to enforce parking restrictions did not act under color of state law because he never "attempted to cloak himself in his authority as alderman" by, for example, identifying himself as an officeholder during his encounter with the plaintiff. Wilson v. Price, 624 F.3d 389, 394 (7th Cir. 2010). An assistant state's attorney who executed a petition for a "judicial inquiry into plaintiff's mental condition" did not act under color of state law because he acted "as a private citizen." Byrne v. Kysar, 347 F.2d 734, 736 (7th Cir. 1965). That was so even though the assistant state's attorney put his official title on the petition. Id. Another defendant in the same case, a physician employed by "an instrumentality of the City of Chicago," did not act under color of state law when diagnosed the plaintiff's condition and certified it for the court. Id. Those were the actions of a "private physician," id., notwithstanding any resemblance to the physician's official duties. Panatera's conduct was even further removed. He never invoked his authority as a paramedic at all, let alone a City paramedic, and instead acted entirely as a private citizen.

Panatera's conduct is unlike that of the paramedics in Salazar v. City of Chicago, No. 84 C 10156, 1985 WL 2482 (N.D. Ill. Sept. 9, 1985), which DiDonato mentions in passing, DiDonato Br. 25. There, paramedics arrived at the scene of the plaintiff's car accident and allegedly failed to treat him, pursuant "to a City policy that prevented treatment of inebriated traffic accident victims." Salazar, 1985 WL 2482, at *2. The district court determined that the plaintiff sufficiently alleged that the paramedics acted under color of state law when they allegedly invoked that City policy. Id. That is consistent with the principle that a person

12

acts under color of state law when his action is made possible only by his public employment.

Here, by contrast, Panatera did not act pursuant to any City policy when he described DiDonato's injury as "bad" and put a towel around her head. He did not invoke his authority as a City employee at any point, and his conduct was not made possible because of his position as a paramedic. Absent any exercise of state authority, Panatera did not act under color of state law but solely as a private individual, and DiDonato's section 1983 claim fails.

## II. DIDONATO WAS NOT DEPRIVED OF A FEDERALLY GUARANTEED RIGHT.

DiDonato fails to state a claim under section 1983 for the additional reason that she does not plausibly allege a violation of her rights under federal law. As we have explained, the second amended complaint captions DiDonato's section 1983 claim as "Deliberate Indifference (Denial of Proper Medical Care)." R. 37 at 9; App. 22. The complaint does not identify a source of federal law that entitled her to proper medical care. It is true that the substantive component of the Fourteenth Amendment's due process clause encompasses "a right to bodily integrity." Wudtke, 128 F.3d at 1062. But where, as here, a private actor is alleged to have caused harm, the Constitution "generally confer[s] no affirmative right to governmental aid." DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 196, (1989). This principle "rests on the understanding that the due process clause establishes a right to be let alone, not a right to be assisted." Paine v. Cason, 678 F.3d 500, 510 (7th Cir. 2012).

The DeShaney Court did, however, recognize that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." DeShaney, 489 U.S. at 199-200. Additionally, DeShaney has been interpreted to impose liability in cases where "the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced." First Midwest Bank, 988 F.3d at 988 (internal quotation marks omitted).[3] DiDonato seeks recovery on the grounds that she was in state custody and encountered a state-created danger, DiDonato Br. 10, but she cannot prevail on either theory.

### A.      DiDonato Was Not In State Custody.

First, DiDonato cannot claim an entitlement to proper medical care on the ground that she was in state custody while she was at Panatera's home. "[I]t is the State's affirmative act of restraining the individual's freedom to act on his own behalf – through incarceration, institutionalization, or other similar restraint of personal liberty" – that gives rise to "a corresponding duty to assume some

---

[3] The cases DiDonato cites, DiDonato Br. 19-20, are consistent with these principles. See Paine, 678 F.3d at 507 (DeShaney "holds that the Constitution does not create a right to be protected from criminal predators."); Sandage v. Board of Commissioners, 548 F.3d 595, 596 (7th Cir. 2008) ("There is no federal constitutional right to be protected by the government against private violence in which the government is not complicit."); Monfils v. Taylor, 165 F.3d 511, 520 (7th Cir. 1998) (explaining that evidence supported finding of a state-created danger where police increased risk of private violence against an informant); Reed v. Gardner, 986 F.2d 1122, 1125 (7th Cir. 1993) ("DeShaney and its progeny make it clear that the police have no affirmative obligation to protect citizens from drunk drivers."). For the reasons we will explain, DiDonato cannot prevail on any theory.

responsibility for his safety and general well-being." <u>DeShaney</u>, 489 U.S. at 200 (emphasis added). No such duty arises when the custodian is a private actor, as <u>DeShaney</u> makes clear. <u>Id.</u> at 201. The requirement of state custody is consistent with the principle that the Fourteenth Amendment "can be violated only by conduct that may be fairly characterized as 'state action.'" <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 924 (1982).

Panatera did not act under color of state law, as we have explained. "Where . . . deprivations of rights under the Fourteenth Amendment are alleged," the requirements of action under color of state law and state action "converge." <u>American Manufacturers Mutual Insurance Co. v. Sullivan</u>, 526 U.S. 40, 50 n.8 (1999). Panatera's private conduct was not state action, so his acts could not have given rise to state custody. Accordingly, DiDonato cannot rely on her allegations that Panatera "picked [her] up," R. 37 ¶ 21; App. 16, or that he "plac[ed] his bodily pressure on her body," R. 37 ¶ 26; App. 17, to allege she was in state custody. Neither of those acts constituted state action. And to the extent DiDonato argues that she lacked the "liberty" to leave Panatera's home because her head injury left her "in a state of immobility, disoriented and near unconsciousness," DiDonato Br. 13, that did not amount to state custody because state action did not cause her injury – rather, she slipped and fell accidentally.

The absence of state action makes this case different from <u>Salazar v. City of Chicago</u>, 940 F.2d 233 (7th Cir. 1991), on which DiDonato relies, DiDonato Br. 21-22. There, the defendants conceded that the plaintiff "should be treated as a pretrial detainee," <u>Salazar</u>, 940 F.2d at 237, so there was no question that the

plaintiff was in state custody.  Here, by contrast, the alleged custodian was a private actor.  So DiDonato cannot assert an entitlement to proper medical care on the theory that she was in state custody while she was at Panatera's home.

**B.      DiDonato Did Not Encounter A State-Created Danger.**

DiDonato cannot prevail on the notion that she encountered a state-created danger, either.  There are many problems with this theory.  To begin, DiDonato forfeited it by failing to raise it in the district court.  When the court dismissed the section 1983 claim in the amended complaint without prejudice, it explained that "[i]f DiDonato is attempting to argue that she qualifies for the state-created danger exception, she has effectively waived this argument by failing to develop it at all." R. 34 at 6.  Despite being informed of this shortcoming and having the opportunity to replead, DiDonato did nothing to support a claim that she encountered a state-created danger.  Panatera's motion to dismiss the section 1983 claim in the second amended complaint pointed out that DiDonato "has not pleaded any facts" showing a state-created danger, R. 43 at 4, and DiDonato's response did not challenge that assertion, see R. 51.  Indeed, she proceeded solely on the theory "that she was in Panatera's custody." Id. at 2.  Her opposition to the City's motion to dismiss likewise rested on her argument that she was in Panatera's custody.  R. 52 at 2. The district court thus correctly explained that DiDonato did not raise "the state-created danger exception" when it dismissed the section 1983 claim with prejudice. R. 57 at 6; App. 7.

DiDonato now raises the state-created danger theory for the first time on appeal.  But this court has admonished that if a plaintiff "needed to establish

16

certain facts as grounds for relief, it should have alleged those facts in its complaint or at least asserted them in opposing dismissal in the district court." Defender Security Co. v. First Mercury Insurance Co., 803 F.3d 327, 335 (7th Cir. 2015). And a party's failure to raise "an argument establishing that dismissal is inappropriate" results in forfeiture. G & S Holdings LLC v. Continental Casualty Co., 697 F.3d 534, 538 (7th Cir. 2012). Forfeiture is especially warranted here because the district court told DiDonato that she did not articulate a state-created danger theory and gave her a chance to replead. She should not be heard to urge reversal based on a theory she did not raise in the district court, despite having had ample opportunity.

And in addition to forfeiture, DiDonato did not plausibly allege a state-created danger. To begin, she makes no allegations supporting liability against the City on this theory. DiDonato says that her section 1983 count asserts "claims against both Panatera and the City," DiDonato Br. 3, but she utterly failed to allege facts supporting municipal liability. The section 1983 count names only Panatera as a defendant, R. 37 at 9; App. 22, and notwithstanding its references to "defendants," R. 37 at 10-11; App. 23-24, it does not include allegations that would support a finding that the City is liable. Respondeat superior liability is not available under section 1983, Perkins v. Lawson, 312 F.3d 872, 875 (7th Cir. 2002), so DiDonato cannot proceed against the City by relying on her allegations against Panatera. Rather, under Monell, "a municipality is not liable under § 1983 unless a loss is caused by a municipal custom or policy." Monfils v. Taylor, 165 F.3d 511, 517 (7th Cir. 1998). DiDonato has made no allegations concerning City custom or

17

policy, so there is no basis for finding the City liable for putting DiDonato in a position of danger.

Nor is there any basis for holding Panatera liable on that theory, either. A plaintiff pursuing a state-created danger theory "must prove that (1) the state created or increased a danger to him, (2) the state's failure to protect plaintiff was a proximate cause of his injuries, and (3) the state's failure to protect the individual shocks the conscience." <u>Wilson v. Warren County</u>, 830 F.3d 464, 469-70 (7th Cir. 2016). DiDonato did not allege any of these factors. Most fundamentally, Panatera was not a state actor, as we have explained. Thus, nothing he did could have amounted to a danger created or increased by the state. Nor does DiDonato even coherently explain what kind of state-created danger she supposedly faced in any event. Although DiDonato argues that she "needed to be protected from Panatera, the State," DiDonato Br. 15, he was not the "state," as we have explained. Moreover, she went to Panatera's house voluntarily, and asserts that "the action began with a severe head injury in Panatera's bathroom." <u>Id.</u> at 19. Panatera did not inflict that injury or cause DiDonato to be in a position where she would encounter a danger she would not have otherwise encountered. DiDonato also vaguely asserts that Panatera "exacerbated her condition" by keeping her in his apartment, <u>id.</u> at 21; <u>see id.</u> at 23 (heading, "Exacerbating the Deprivation of Her Freedom"), but that vague assertion, which does not clearly relate to a "danger," is

18

plainly insufficient to avoid dismissal on a purported state-created danger theory.[4]

## CONCLUSION

———

For the foregoing reasons, the district court's judgment should be affirmed.

Respectfully submitted,

CELIA MEZA
  Acting Corporation Counsel

s/ Stephen G. Collins
BY:   STEPHEN G. COLLINS
Assistant Corporation Counsel
2 N. LaSalle Street, Suite 580
Chicago, Illinois 60602
(312) 742-0115
stephen.collins@cityofchicago.org

---

[4]  DiDonato also asserts that the district court "dismissed the City of Chicago as to the wilful [sic] and wanton claim" of her second amended complaint, DiDonato Br. 1, and seeks reversal of that purported decision, id. at 25.  But the district court granted the "motions to dismiss as to the Section 1983 claims only."  R. 57 at 12; App. 13.  The court declined to exercise jurisdiction over the state-law claims, including the count for willful and wanton conduct.  Id.  So this court has no occasion to consider the adequacy of the willful and wanton claim.

**CERTIFICATE OF COMPLIANCE**

In accordance with Fed. R. App. P. 32(g)(1), I certify that the foregoing brief complies with the type-volume limitation provided by Fed. R. App. P. 32(a)(7)(B)(i) and Circuit Rule 32(c).  This brief contains 5,437 words, beginning with the words "Jurisdictional Statement" and ending with the words "Respectfully submitted" in the Conclusion section, as recorded by the word count of the Microsoft Word word processing system used to prepare the brief.

s/ Stephen G. Collins
STEPHEN G. COLLINS, Attorney

**CERTIFICATE OF SERVICE**

I certify that on May 14, 2021, I electronically filed the attached Brief of Defendant-Appellee with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

s/ Stephen G. Collins
STEPHEN G. COLLINS, Attorney